IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| Alberto Garcia, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number:  3:09cv26 |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Alberto Garcia ("Garcia" "plaintiff," or "claimant"), initiated this action under

42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying his April 27, 2005 application for disability insurance

benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and denying his

application for supplemental security income under Title XVI of the Social Security Act, 42

U.S.C. §§ 1381-1383c.  (Tr. 8-10).[1]  On February 17, 2008, the Commissioner found Garcia

disabled  based on a subsequent application for benefits for Title II disability benefits filed after

the ALJ's  unfavorable decision.  Memorandum in Support of Motion for "Sentence Four"

Reversal and Remand, Doc. #12, at 1.  The Commissioner found Garcia "entitled to monthly

---

[1]A hearing on the application at issue was held on January 9, 2007.  The ALJ issued his
decision on July 16, 2007.  The Appeals Council issued its decision on February 3, 2009.  Garcia
filed this complaint on March 19, 2009.

1

disability benefits from Social Security beginning July 17, 2008," the day after the unfavorable ALJ decision on the earlier application.  Id.  This case involves the period from the claimed disability onset date of August 31, 2004, until the effective date of the award of benefits.

## Summary of Recommendation

The Magistrate Judge recommends plaintiff's Motion for "Sentence Four" Reversal and Remand be **DENIED** (Doc. # 11).  After consideration of the entire record, the Magistrate Judge finds that substantial evidence on the record as a whole supports the Administrative Law Judge's determination that Garcia was not disabled during the period covered by his April 27, 2005 application for benefits.  Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment (Doc. #19) be **DENIED**, defendant's motion for summary judgment (Doc. #25) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

## Motion for Remand Pursuant to Sentence Four

Plaintiff first seeks a "Sentence Four" reversal and remand of the Commissioner's unfavorable decision on his April 27, 2005 application for benefits. Under Sentence Four, a court may affirm, modify, or reverse the decision of the Commissioner with or without remanding for rehearing.  In Buckner v. Apfel, 213 F.3d 1006, 1010 (8th Cir. 2000), the court noted the distinctions between Sentence Four and Sentence Six:

> Section 405(g), which governs judicial review of final decisions made by the Commissioner, authorizes only two types of remand orders: (1) those made pursuant to sentence four, and (2) those made pursuant to sentence six. See Melkonyan v. Sullivan, 501 U.S. 89, 9899, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991); Hafner v. Sullivan, 972 F.2d 249, 250-51 (8th Cir.1992). Sentence four, by its terms, authorizes a court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence four remand is therefore proper whenever the district court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case in accordance with such

a ruling. See Melkonyan, 501 U.S. at 98, 111 S.Ct. 2157.

> Sentence six, in contrast, authorizes a remand in only two limited situations: (1) where the Commissioner requests a remand before answering the complaint of a claimant seeking reversal of an administrative ruling, or (2) where new and material evidence is adduced that was for good cause not presented during the administrative proceedings. See 42 U.S.C. § 405(g); Shalala v. Schaefer, 509 U.S. 292, 297 n. 2, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir.1993). The first of these situations distinguishes a sentence six remand from a sentence four remand based on timing, while the second situation does so based on substance. See Sullivan v. Finkelstein, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990) (noting that sentence six authorizes an "entirely different kind of remand" than sentence four). This substantive distinction insures that a remand pursuant to the second part of sentence six concerns only new and material evidence and "does not rule in any way as to the correctness of the administrative proceeding," as does a sentence four remand. Melkonyan, 501 U.S. at 98, 111 S.Ct. 2157; see Finkelstein, 496 U.S. at 626, 110 S.Ct. 2658.

Buckner v. Apfel, 213 F.3d 1006, 1010 (8th Cir. 2000).  A Sentence Four remand is proper when the court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case accordingly.  Id.  In contrast, a Sentence Six remand does not require a substantive ruling by the court, but rather allows the court to remand the decision either based on the timing of a motion from the Commissioner, or because there is new and material evidence that was not presented by the claimant before the unfavorable decision.  Id. at 1010.

Plaintiff asserts that the Commissioner's subsequent favorable finding of disability, without detailed explanation as to the reasons, raises the question as to whether or not Garcia was disabled prior to the Commissioner's finding of disability on the second application. Memorandum in Support of Motion for "Sentence Four" Reversal and Remand, Doc. #12, at 3. Plaintiff relies on the Commissioner's administrative guidelines, which state,  "[I]f the subsequent claim is allowed while the prior claim in pending in court. . . , the Appeals Council (AC) must determine the effect, if any, of such action on the other claim."  Id. at 3-4 (citing

3

Hearings, Appeals and Litigation Law Manual (HALLEX)  I-4-2-101, Section I.A.).  The Commissioner has refused to seek or agree to a remand, contending that the Appeals Council considered and rejected the favorable finding of disability on the later application as a basis for changing the ALJ's July 16, 2007 decision in compliance with HALLEX.  Memorandum in Opposition to Motion for "Sentence Four" Reversal and Remand, Doc. #14, at 4-6.

The Magistrate Judge concludes that a Sentence Four reversal and remand is not warranted in this case.  The Appeals Council specifically considered the fact that, since the date of the unfavorable ALJ decision, Garcia had been found disabled, and concluded that this fact did not warrant a change to the ALJ decision.  Id. at 5.  Further, the current state of the law in the Eighth Circuit does not support a conclusion that the HALLEX provision requires remand pursuant to Sentence Four.  See Ellis v. Astrue, 2008 WL 4449452 (E.D. Mo. 2008) (The Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX).[2]

Although Garcia did not initially ask the court to consider a Sentence Six remand, plaintiff essentially seeks a Sentence Six remand based on new and material evidence, with the new evidence being the subsequent favorable decision of the Commissioner.  In Allen v. Astrue,

_____

[2]Courts differ on the effect of HALLEX.  The Ninth Circuit, in Moore v. Apfel, stated, "As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual." Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir.2000) (citing Schweiker v. Hansen, 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam) (holding that rules in claims promulgated for claims representatives do not bind the Social Security Administration)). The Fifth Circuit held in Newton v. Apfel that although HALLEX does not carry the authority of law, "'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required,' and should prejudice result from a violation of an agency's internal rules, the result cannot stand."  Newton v. Apfel, 209 F.3d 448, 459 (5th Cir.2000) (quoting Hall v. Schweiker, 660 F.2d 116, 119 (5th Cir.1981)).  See also Starr v. Apfel, 2008 WL 4402195, n.1 (E.D. Mo.) (recognizing a circuit split as to whether or not the HALLEX is binding law).

the claimant similarly argued that the subsequent favorable decision "constitutes new and material evidence justifying remand under §405(g)." Allen v. Astrue, 561 F.3d 646, 653 (6th Cir. 2009). The Sixth Circuit rejected this argument stating, "The magistrate judge correctly found that a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." Id. The court further recognized that a Sentence Six remand would only be appropriate if the later favorable decision was supported by new and material evidence that claimant "had good cause for not raising in the prior proceeding." Id.

 Accordingly, the Magistrate Judge recommends plaintiff's Motion for Sentence Four Remand based solely on the subsequent award of benefits (Doc. #11) be **DENIED**.

### Merits of Decision on First Application

The Magistrate Judge advised the parties of her intention to recommend a denial of the motion for summary judgment based on "Sentence Four." Plaintiff requested the opportunity to challenge the merits of the ALJ decision. The court established a new briefing schedule, and both parties have now moved for summary judgment on the merits of the Commissioner's denial of benefits on Garcia's April 27, 2005 application.

### Factual Background

Garcia  protectively filed his applications for disability insurance benefits and supplemental security income on April 27, 2005 under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383. He alleged a disability onset date of April 2005, but the ALJ granted his request to amend the onset date to August 31, 2004. (Tr. 44). His application was denied initially and on reconsideration.

He requested a hearing, which was held on January 9, 2007.  Garcia appeared with his attorney and testified at the hearing.  Vocational Expert Thomas Audet also testified. (Tr. 44). Administrative Law Judge ("ALJ") Lyle Olson agreed to hold the record open for further evidence and issued his decision on July 16, 2007, finding plaintiff was not disabled.  (Tr. 44-79).  Garcia requested review of the ALJ's decision and submitted supplemental argument to the Appeals Council.  (Tr. 13).  The Appeals Council considered the arguments of counsel and the subsequent award of benefits, concluding neither "warrant a change in the Administrative Law Judge's decision." (Tr. 9).  The Appeals Council denied Garcia's request for review, making the decision of the ALJ the Commissioner's final decision.

Garcia was 48 years old at the time of the decision, and 45 at the time of alleged disability onset.  (Tr. 77).  He obtained a General Equivalency Diploma in July 1976,  and received training for auto body mechanic and auto body refinish.  (Tr. 175).  He has worked as an elevator operator, punch press operator, cashier, telemarketer, and janitor.  (Tr. 190, Tr. 221). Garcia alleges he has been disabled since August 31, 2004 due to chronic knee pain,  back pain, depression and poor memory, anxiety and stress, diabetes and high blood pressure.  (Tr. 53).

### Legal Standard

Upon review of the pleadings and transcript of the record, the court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).  To affirm the Commissioner's decision, the court must find that substantial evidence appearing in the record as a whole supports the decision.  See id.; Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989).  "This standard requires a more searching review than the substantial evidence standard, and [the court will] take into account record evidence that

fairly detracts from the ALJ's decision."  Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (citing Minor v. Astrue, 574 F.3d 625, 627 (8th Cir. 2009)).  The court must  "take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  Minor, 574 F.3d at 627 (citing Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989) (quoting Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1998)).  See also, Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998) ("As this court has repeatedly stated, the 'substantial evidence in the record as a whole' standard is not synonymous with the less rigorous 'substantial evidence' standard."); Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987) ("It is not sufficient for the district court to simply say there exists substantial evidence supporting the [Commissioner] and therefore the [Commissioner] must be sustained.").

"In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council."  Bergmann v. Apfel, 207 F.3d 1065, 1068 (8th Cir. 2000) (citations omitted). The court must decide if substantial evidence in the record as a whole, including the new evidence submitted to the Appeals Council after the hearing, supports the ALJ's decision.  Id. (citation omitted).  This requires the court to determine how the ALJ would have weighed the new evidence had it existed at the hearing.  Id.

### ALJ Findings and Issues for Review

The ALJ employed the familiar five-step test to determine whether Garcia was disabled.[3]

---

[3]The five steps are:  (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1; (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.  20 C.F.R. § 404.1520(a)(5)(i)-(v).

The ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability.  (Tr. 49).  He found Garcia has the following severe impairments that do not meet or equal any listed impairments: "mild bilateral facet joint arthropathy at L5-S1; degenerative disc disease, lumbar spine, with annular tearing at L4-5 and L5-S1; osteoarthritis, bilateral sacroiliac joints; mild disc disease, cervical spine, most prominent at C4-5 and C6-7; chondrocalcinosis of the right medial meniscus with associated mild joint space narrowing' and an adjustment disorder, chronic with anxiety and depressed mood."  (Tr. 51).  The ALJ recognized claimant's additional medical conditions, concluding that they do not, even in combination, constitute severe impairments.  (Tr. 52-57).[4]  Further, the ALJ "fail[ed] to find documentation establishing the existence of a medically determinable cognitive impairment or a medically determinable learning disorder," but found that "the record clearly supports the existence of a medically determinable mental impairment," stemming from a depressive disorder, thought disorder, dysthymic disorder or adjustment disorder.  The ALJ addressed the mental impairment as an affective disorder without a "label."  (Tr. 58).  He then concluded that the severe impairments, "considered alone or in combination" do not meet or equal a listed impairment.  (Tr. 58).  The ALJ determined Garcia is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national economy he can perform.  (Tr. 77-78).

---

[4]The ALJ considered at length Garcia's complaints of  "adrenal problems," shoulder pain, dry eyes, stomach problems, memory problems, headaches, hypertension, diabetes mellitus, high cholesterol, visual impairment, sleep apnea and daytime somnolence, nasal congestion, mild hearing loss and history of tinnitus." ALJ Olson concluded none "placed more than slight or mild limitations on claimant's ability to perform basic work-related activities for a period of twelve consecutive months."  (Tr. 53-56).

Plaintiff alleges the ALJ and Appeals Council committed the following errors: Misapprehending and ignoring objective medical evidence of the severity of his depression, failing to accept as credible plaintiff's subjective complaints; failing to give proper weight to the opinions of his treating physicians; failing to consider all of his mental and physical limitations, and not properly considering his age at the time of disability onset.

### Degree of Mental Impairment

Plaintiff argues that ALJ Olson committed reversible error in failing to properly consider the objective results of the ZUNG depression test derived pursuant to a mental health clinic intake conducted by Mark A. Swenson, MSW, LICSW on October 1, 2005.  Mr. Swenson noted that plaintiff scored 63 on the ZUNG depression screen, which he categorized as severe to extreme depression.  (Tr. 674) ("A mood disorder screening test (ZUNG) suggests a severe to extreme depression (raw score = 63).").  The court finds plaintiff's argument is misplaced.  First, the ZUNG test is not an objective test, but rather a reflection of plaintiff's self rating, resulting in "scores [that] provide indicative ranges for depression severity that can be useful for clinical and research purposes, . . ." used in conjunction with, but not as a replacement for "a comprehensive clinical interview for confirming a diagnosis of depression."  See http://www.who.int/substance_abuse/research_tools/zungdepressionscale/en/.  It further appears that the interpretation of the result is not based on a uniform standard.  Generally "a score of 70 and above indicates severe depression," id., although Mr. Swenson found a score of 63 to reflect severe to extreme depression.  Id.  Thus, the ZUNG test results do not support plaintiff's position that he suffered from severe depression during the period at issue.  The ALJ's failure to consider the evidence is not reversible error.

Ample evidence in the record supports the ALJ's determination that plaintiff's depression

was not as severe as claimed.   Substantial evidence also supports the ALJ's finding that the record does not establish "the existence of a medically determinable cognitive impairment or a medically determinable learning disorder." (Tr. 57).

Following comprehensive testing on November 1, 2004, Dr. Rodney Swenson, a neuropsychologist, addressed both the depression aspect and cognitive aspect of Garcia's alleged impairments.  As for Garcia's depression, Dr. Swenson noted that although claimant is "reporting severe levels of depression," he does not perform on neuropsychological tests "like someone who is severely depressed."  (Tr. 1302).  Dr. Swenson noted that Garcia had more difficulty with verbal memory, but that this could easily be overcome "by giving him a list-learning format."  Dr. Swenson concluded, "In general, I do not think there is much from a neuropsychological perspective that would stop Alberto from either going to school or working at a job." (Tr. 1302).  Further, to this end Dr. Rosenheim, a clinical psychologist,  commented, "Very significant is the fact that the patient had a neuropsychological assessment in November, 2004 which was reviewed by a Psychiatrist in this Department.  Results were apparently largely normal and both cognitive disorders and learning disability were ruled out. . . ." (emphasis added) (Tr. 665).  Dr. Rosenheim found Garcia's "presentation well oriented, cognitively intact, and affectively appropriate,"  and assured Garcia "all evidence is inconsistent with cognitive deterioration or remarkable learning disability."  (Tr. 665).  On August 8, 2006, Dr. Patricia R. Sohler, Ph.D. summarized Garcia's mental status in a manner inconsistent with the claimant's alleged mental impairments.  Specifically, Dr. Sohler noted that Garcia's "mood appeared normal and his affect was appropriate," and she found "no evidence of gross intellectual deficits."  (Tr. 1416). Additionally, the ALJ's assumption that Garcia's non-compliance with prescribed medications "lead (sic) to less than optimal improvement in his symptomatology,"

10

(Tr. 71), is supported by the record.  (Tr. 323: "[A]nd poor med compliance possibly causing or exacerbating mood, anxiety and energy complaint;" Tr. 314: Orientation x3 and memory unremarkable- its (sic) not that he isn't recalling meds, he doesn't take them;" Tr. 672: "He has some dislike for medication and is not very compliant.")

Moreover, there are several statements in the record from treating physicians that Garcia has a tendency to overstate his psychopathology.  For example, in January 2005, Dr. Walk, psychologist, suggested that Garcia "was not unemployable due to his mental health symptoms." (Tr. 1317).  She noted the following with respect to Garcia's psychological testing:

> The veteran was administered the Minnesota Multiphasic Personality Inventory II and Millon Clinical Multiaxial Inventory III on January 18, 2005.  The veteran achieved scores on the validity scales of the Minnesota Multiphasic Personality Inventory II and Millon Clinical Multiaxial Inventory III that indicated he approached the testing in a manner that overstated symptoms.  Thus, the results of the tests cannot be considered a valid approximation of his psychological functioning.

(Tr. 1316).  On August 8, 2006,  Garcia again underwent the Minnesota Multiphasic Personality Inventory 2 and the Millon Clinical Multiaxial Inventory III testing.  Dr. Patricia R. Sohler, Ph.D., opined,  "He achieved scores on the Validity Scales of these two tests that indicated that he approached the testing in a manner that overstated psychopathology." (Tr.  1416).  Dr. Sohler also made the following statement:

> The veteran continues to report symptoms that meet criteria for adjustment disorder; chronic; with mixed anxiety and depressed symptoms.  This appears to be related to his physical pain and he believes he is not employable. . . .  It is as likely as not that mental health disorders are interfering with his ability to maintain full-time employment.  However, psychological testing results suggest that he is overstating the degree and number of his psychological symptoms.  His performance on neuropsychological testing, according to the report, indicates that he is able to learn new tasks.  It is as likely as not that the veteran is not totatlly (sic) unemployable due to his mental health disorders.

(Tr. 1417).  Plaintiff asserts the only reasonable conclusion to be drawn from this statement is

that he is incapable of sustained full-time employment.  Rather, the court finds this statement

equivocal and subject to various interpretations; the ALJ's interpretation is a reasonable one.

Thus, substantial evidence supports ALJ Olson's finding that claimant's mental impairment

causes no more than mild limitations on his activities of daily living.

### Treating Physician Opinions

Plaintiff asserts ALJ Olson erred in failing to give proper consideration to his treating

physicians' opinions that he needs to elevate his legs periodically and at most he is able to work

part-time.  In particular, following his examination of plaintiff on November 17, 2005, Dr.

Bonnabeau opined:

> I feel the veteran could work part- time.  He could do some sedentary job.  The
> big problem, however, is that he has to change position.  He cannot stand all the
> time or lie down or sit or assume one position for a real long period of time.  It
> just will not work.  Consequently he will have to change position at will.  I also
> feel that he would have to work part-time.  I do not feel that with all things
> considered and everything he has that he could maintain a full-time job.

(Tr. 667-70).  ALJ Olson considered and rejected Dr. Bonnabeau's opinion, stating:

> [G]iven the lack of significant objective clinical signs and findings, it stands to
> reason the Dr. Bonnabeau based his opinion on claimant's subjective complaints
> which, for the reasons which will be set forth later in this decision, the
> undersigned cannot regard as entirely credible.  Therefore,  the undersigned
> cannot assign significant weight to the opinion of Dr. Bonnabeau.

(Tr. 66).  Plaintiff contends that if proper weight is given to Dr. Bonnabeau's opinion, a finding

of disability is required.  However, Garcia's argument fails for several reasons.  First, Dr.

Bonnabeau is an examining physician, not a treating physician.  Dr. Bonnabeau saw Garcia only

once, and there is no evidence of an ongoing treating relationship.  Thus, his opinion is not

entitled to deference.  20 C.F.R. §§ 404.1502, 1527(d)(2).  Second, opinions on whether a

claimant is disabled or unable to work are reserved to the Commissioner.  20 C.F.R. §

12

404.1527(e)(1).  See Krogmeier v. Barnhart, 294 F.3d1019, 1023 (8th Cir. 2002) (Whether or not

the plaintiff is able engage in full or part-time employment is within the province of the

Commissioner and is not the proper basis for a medical opinion).  Finally, there is significant,

contrary evidence in the record that Garcia is not unemployable.  On August 23, 2005,  Garcia's

treating physician Dr. Myint, opined, "It is concluded that I cannot determine that he is unable to

perform the functions of his Housekeeping Aid position.  In other words, he is not disabled from

the position of Housekeeping Aid." (emphasis added) (Tr. 689).  The ALJ did not improperly

disregard Dr. Bonnabeau's opinion.

### Subjective Complaints

"An adjudicator may not disregard a claimant's subjective complaints solely because the

medical evidence does not fully support them," or solely based on personal observations.

Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  Several factors must be considered in

analyzing a claimant's subjective complaints:

> The absence of an objective medical basis which supports the degree of severity of
> subjective complaints alleged is just one factor to be considered in evaluating the
> credibility of the testimony and complaints. The adjudicator must give full consideration
> to all of the evidence presented relating to subjective complaints, including the claimant's
> prior work record, and observations by third parties and treating and examining
> physicians relating to such matters as:  1. the claimant's daily activities; 2. the duration,
> frequency and intensity of the pain; 3. precipitating and aggravating factors; 4. dosage,
> effectiveness and side effects of medication; 5. functional restrictions.

Id.  "Subjective complaints may be discounted if there are inconsistencies in the evidence as a

whole."  Id.

Plaintiff asserts the facts of this case "amply disclose, Garcia demonstrated limitations in

activities of daily living, the severity of his symptoms and disabling pain, ineffectiveness of and

side effects to medications, as well as dramatic functional restrictions."  Brief in Support of

Plaintiff's Motion for Summary Judgment, Doc. # 20, at 36.  Specifically, plaintiff argues ALJ

Olson improperly rejected Garcia's need to elevate his legs, as confirmed by Dr. Davis, [5] and

improperly discounted Garcia's complaints of disabling pain.  Id. at 37-38.

     The ALJ determined Garcia "engaged in activities of daily living subsequent to his

alleged disability onset date which are clearly more consistent with his established residual

functional capacity than his allegations of 'disability.'" (Tr. 67).  The ALJ cited the following

facts as support for his conclusion: Garcia reported to Dr. Sohler in August 2006 that his days

were spent watching television and caring for his three young children, which the ALJ found

"clearly inconsistent not only with the degree and duration of pain alleged by claimant at

hearing, but is also inconsistent with the severity of claimant's alleged memory problems." (Tr.

68).  Further, the ALJ relied on Dr. Davis' report dated August 21, 2006 that noted claimant was

independent in his activities of daily living.  (Tr. 902).  Further, in February 2007 claimant

reported to Dr. Berger that although he experienced chronic low back pain, his pain level was

"minimal lately," (Tr. 68-69), and the ALJ noted claimant "did not voice any complaints of knee

pain to Dr. Berger that day."  (Tr. 67-69).

     The court finds substantial support in the record for the ALJ's conclusions.  ALJ Olson

thoroughly evaluated the record and gave specific reasons for finding plaintiff's complaints were

not fully credible.  "If an ALJ explicitly discredits the claimant's testimony and gives good

reason for doing so, [the court] will normally defer to the ALJ's credibility determination."

Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (citations omitted).  The record supports the

---

     [5]"The bilateral knee pain is decreased by heating pads, hot baths, and getting off of his
feet and elevating them."  (Tr. 900).  "Back pain is decreased by getting of his feet, changing his
body position, and his medications."  (Tr. 900).

ALJ's determination that plaintiff's testimony regarding his subjective complaints is not fully credible, and the ALJ appropriately determined plaintiff's residual functional capacity based on all of the credible limitations.  See Forte v. Barnhart, 377 F.3d 892, 897 (8th Cir. 2004) (A proper hypothetical need only include those impairments and limitations found credible by the ALJ).

### Age as a Factor to Adjusting to Other Work

ALJ Olson referred to Garcia as a "younger individual by Social Security definition (20 C.F.R. 404.1563)."  (Tr. 77).  Plaintiff submits the ALJ ignored the fact that, at 45, "age is a less advantageous factor for making an adjustment to other work than for those who are age 18-44.'" Brief in Support of Plaintiff's Motion for Summary Judgment, Doc. # 20, at 39.  Plaintiff claims to meet criteria (i)- (iii) of 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 201.00 (h)(1), and "there is strong evidence that Garcia meets criteria (iv) as well."  Brief in Support of Plaintiff's Motion for Summary Judgment, Doc. #20, at 34.  This section provides:

> The term *younger individual* is used to denote an individual age 18 through 49.  For individuals who are age 45-49, age is a less advantageous factor for making an adjustment to other work than for those who are age 18-44. Accordingly, a finding of "disabled" is warranted for individuals age 45-49 who:
> - (i)    Are restricted to sedentary work,
> - (ii)   Are unskilled or have no transferable skills,
> - (iii)  Have no past relevant or can no longer perform past relevant work, and
> - (iv)  Are unable to communicate in English, or are able to speak and understand English but are unable to read or write in English.

20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 201.00 (h)(1).

Careful review of the grids contained in Table No. 1- Residual Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s), and the factors to be considered therein, show otherwise. Garcia obtained a GED.  (Tr. 214).  In addition, he received vocational training in autobody.  (Tr. 214).

15

Garcia is bilingual in English and Spanish, and he testified at the hearing that he is more comfortable with English.  (Tr. 1436-1437).  At least two of his prior work experiences, telemarketer and punch-press operator, are considered semi-skilled.  (Tr. 190).  Therefore, ALJ Olson's finding is supported by substantial evidence.

**Conclusion**

 The ALJ properly determined Garcia could perform jobs that exist in significant numbers in the national economy.  After considering the errors alleged by Garcia, the magistrate judge is satisfied that substantial evidence supports the ALJ's findings and conclusions that plaintiff was not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion to remand pursuant to Sentence Four (Doc. #11) be **DENIED**, plaintiff's motion for summary judgment (Doc. #19) be **DENIED**, defendant's motion for summary judgment (Doc. #25) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

**Notice of Right to Object**

 Pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1 (D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy.  Any other party may respond to an objection within seven (7) days thereafter.

 Dated this 27th day of August, 2010.

 */s/ Karen K. Klein*
 Karen K. Klein
 United States Magistrate Judge